**UNITED STATES of America,**

v.

**Frank DeSALVO, Defendant.**

No. CR–92–119.

United States District Court,
E.D. New York.

June 2, 1992.

Paul B. Bergman, New York City, for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This decision considers defendant's omnibus pretrial motion requesting various forms of relief including dismissal of the superseding indictment. The motion is denied for the reasons hereinafter set forth.

The indictment charges defendant with twelve counts of perjury, 18 U.S.C. § 1623(a), and obstructing justice, 18 U.S.C. § 1503.

This case is related to the prosecution of seven persons associated with the law firm Morris P. Eisen, P.C. ("Eisen firm") for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (the "*Eisen* case"). That case established to a jury's satisfaction that the defendants committed various forms of fraud in bringing numerous personal injury lawsuits.

Defendant DeSalvo was an attorney at the Eisen firm from 1981–1983, a period during which certain acts charged in the prior RICO case occurred. The instant indictment charges that DeSalvo committed perjury when he testified before grand and petit juries regarding three Eisen firm cases: *Mulnick, Miceli,* and *Pietrafessa.*

Defendant's history of giving testimony is not in dispute. A state grand jury subpoenaed DeSalvo to appear on September 11, 1987 in connection with an investigation into law firms' misdeeds. DeSalvo received transactional immunity in exchange for that testimony. *See* N.Y.CPL § 190.-40(2). Defendant alleges that as a result of this immunized testimony the prosecution developed "critical leads" to evidence now offered against him, including the testimony of Steven DiJoseph and Paul Winton.

Thereafter, a federal grand jury also subpoenaed DeSalvo. He gave testimony on September 14, 1989, after receiving a grant of immunity pursuant to 18 U.S.C. § 6002. At this time DeSalvo testified about two Eisen firm cases, *Mulnick* and *Wise v. Benenson.* In particular, he denied knowing that his cousin, Matthew Norrito, was a witness for the Eisen firm in both those cases. He also informed the grand jury about the venue of the *Wise* case. After this appearance the grand jury subpoenaed the records from *Wise.* Defendant contends that the grand jury relied on these records to support the indictment he now confronts insofar as it relates to the *Mulnick* case. DeSalvo also testified as to the address of his former wife, Elizabeth Falcetta, who has for many years contended that defendant engineered a sham lawsuit involving her son.

At the conclusion of the September 14 session the grand jury excused DeSalvo but warned him that it might recall him for further questioning.

DeSalvo returned to the grand jury on September 20. At that time he testified about the *Miceli* case, which he had tried. Before the grand jury DeSalvo denied any knowledge of a false investigation mounted

by an Eisen firm colleague and two firm-employed investigators (one of whom was the son of Geraldine Morganti, who was herself convicted of violating RICO in the previous trial), which resulted in the exclusion of certain testimony favorable to the defense in that case.

DeSalvo last appeared before the grand jury on November 9, 1989. He testified about the *Pietrafesa* case. He denied knowing that a witness in that case, Helen Gaimari, was Geraldine Morganti's mother as well as the grandmother of Susan Morganti, who DeSalvo had dated.

On December 20, 1990, the United States called DeSalvo before the petit jury hearing the Eisen RICO case. Defendant testified, under a compulsion order, consistently with his prior grand jury statements with respect to *Mulnick, Miceli,* and *Pietrafessa.* The government, believing and explaining to the jury that this testimony was false, used it to illustrate the brand of illegality stocked by the Eisen firm.

Defendant moves for the following relief:
(1) Dismissal of the superseding indictment under *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972);
(2) dismissal of the obstruction of justice counts under *Kastigar;*
(3) dismissal of counts stemming from compelled testimony before the petit jury;
(4) severance of counts pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure and *United States v. Doe,* 819 F.2d 11 (1st Cir.1987);
(5) severance of counts pursuant to Rule 14 of the Federal Rules of Criminal Procedure;
(6) striking of surplusage in the indictment pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure;
(7) elimination of allegations based on statements that are literally true under *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973);
(8) a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure; and

(9) a pretrial ruling as to the admissibility of the grand jury testimony of Geraldine Morganti in light of *United States v. Salerno,* 937 F.2d 797 (2d Cir.1991), *cert. granted,* — U.S. ——, 112 S.Ct. 931, 117 L.Ed.2d 103 (1992).

## DISMISSAL OF INDICTMENT DUE TO GRAND JURY'S ALLEGED USE OF IMMUNIZED TESTIMONY

■ Where a person invokes his fifth amendment privilege against self-incrimination a court may nevertheless compel his testimony,

but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except for a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002. This statute "is coextensive with the privilege against self-incrimination" embodied in the fifth amendment. *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). *Kastigar* imposes on the prosecution "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 461, 92 S.Ct. at 1665.

Defendant contends that the grand jury investigation that returned the instant indictment depended upon his prior state and federal immunized testimony. Noting the statutory exception to the immunity rule in a prosecution "for perjury, giving a false statement, or otherwise failing to comply with the [compulsion] order," 18 U.S.C. § 6002, defendant nevertheless contends that this exception does not permit the use of immunized statements made at one time to buttress claims that statements made on other occasions are allegedly false. The fact that DeSalvo testified on several different occasions animates his argument.

■ The prosecution correctly points out that *United States v. Apfelbaum,* 445 U.S.

115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980), eviscerates defendant's argument. In that case the Supreme Court considered whether § 6002's perjury exception applied only to the false statements made before a judicial tribunal, or whether it extended to allow use of all otherwise immunized testimony in a prosecution for perjury or false swearing. The Court, opting for the broader approach, held that the statute—

> makes no distinction between truthful and untruthful statements made during the course of the immunized testimony. Rather, it creates a blanket exemption from the bar against the use of immunized testimony in cases in which the witness is subsequently prosecuted for making false statements.

*Id.* at 122, 100 S.Ct. at 952. The Court found that "Congress intended to permit the use of both truthful and false statements made during the course of immunized testimony" and that such a construction comported with the fifth amendment. *Id.* at 123 & 131, 100 S.Ct. at 953 & 957. Thus the Court permitted use of immunized grand jury testimony "in order to put the charged statements in context and to show that [the defendant] knew they were false." *Id.* at 119, 100 S.Ct. at 951. As the perjury exception is "complete," only "the otherwise applicable rules of evidence" limit the use of immunized testimony in a perjury prosecution. *Id.* at 131–32, 100 S.Ct. at 957–58. This reasoning, of course, applies as much to evidence gathered from "leads" provided by otherwise immunized testimony as it does to the immunized testimony itself.

■ DeSalvo, citing *United States v. Doe*, 819 F.2d 11 (1st Cir.1987), argues that *Apfelbaum* has no application here because DeSalvo testified not once but several times. That is a misreading of *Doe*. Even assuming that it accurately reflects the law of this Circuit, *Doe* simply holds that "immunized testimony in a future appearance before the grand jury cannot be used as evidence to prove a charge of perjury in giving false testimony in his prior appearance." *Id.* at 11. That statement derives from the language in *Apfelbaum*, that,

"even allowing truthful and untruthful immunized testimony in a subsequent perjury prosecution 'the exception would still be regarded as "narrow," once it is recognized that the testimony remains inadmissible in all prosecutions for offenses committed prior to the grant of immunity that would have permitted the witness to invoke his Fifth Amendment privilege absent the grant.' "

*United States v. Seltzer*, 794 F.2d 1114, 1120 (6th Cir.1986) (quoting *Apfelbaum*, 445 U.S. at 128, 100 S.Ct. at 955–56), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987). This timing issue was summarized by the Seventh Circuit:

> The exception in the immunity statute allows the use of immunized testimony only in prosecutions for future perjury [*i.e.*, perjury committed subsequent to the grant of immunity], future false statements and future failure to comply with the immunity order, not for past acts.

*In the Matter of Grand Jury Proceedings of August, 1984*, 757 F.2d 108, 113 (7th Cir.1984) (citations omitted), *cert. denied*, 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 (1985). Defendant's citation to the *Apfelbaum* dissents, which criticize the majority for its reaching the issue, only highlights *Apfelbaum's* authority for the use of immunized testimony to prove perjury occurring after immunity is conferred. In all events, even assuming that DeSalvo's three appearances before a federal grand jury under the same compulsion order constitute three separate grand jury proceedings, *see Doe*, 819 F.2d at 12, (an assumption with which I disagree, *infra*), defendant has not pointed to any perjury alleged in the indictment which will be shown to be perjurious by reference to inconsistent or other statements made in subsequent immunized testimony. As defendant's own description of the substance of his testimony at each grand jury appearance demonstrates, each session concerned different Eisen firm cases. Hence, it is apparent that perjury at one session will not be proved by immunized testimony given later.

Defendant does not add much by citing to case law—principally *United States v. Berardelli*, 565 F.2d 24 (2d Cir.1977)—that the *Apfelbaum* Court observed to be on the other side of the circuit split which prompted the Court to grant certiorari in *Apfelbaum*. *See Apfelbaum*, 445 U.S. at 119 n. 5, 100 S.Ct. at 951 n. 5. The Second Circuit decided *Berardelli* a rule holding that only false statements given under a grant of immunity may be "used to prove ... a later perjury." *Berardelli*, 565 F.2d at 28. As a result, the court permitted use of prior immunized testimony only where a judge "independently determined that the immunized testimony was false." *Id.* at 29. *Apfelbaum*, as already discussed, permitted the use of truthful as well as false statements given under immunity in a perjury prosecution. After *Apfelbaum*, there need be no showing that the unimmunized statements are false when they are used to prove perjury.

Nor does defendant's citation of *United States v. Cameron*, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448 (1914), support his position. That case indeed held that immunized testimony given at one time may not be used to establish perjury occurring later. It turned, however, on Section 860 of the Revised Statutes, in force at the time the allegedly perjurious statements were made. That statute read:

> No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any Court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture: *Provided,* That this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovering or testifying as aforesaid.

This absolute prohibition on the use of evidence with a limited proviso where the prohibition would otherwise exempt the witness from prosecution for perjury differs significantly from the provision of section 6002 creating an exception from the prohibition where perjury is alleged to have occurred after the evidence is given.

Defendant also contends that the government made impermissible use of immunized *state* grand jury testimony. He alleges that the United States relied on that testimony to develop leads, including at least two witnesses—Winton and DiJoseph—whose testimony has supported the indictment in this case and is likely to be used against DeSalvo at trial.

For reasons already discussed, had DeSalvo given this testimony before a federal grand jury, under *Apfelbaum* the grand jury certainly could have used this testimony as evidence of a later perjury. Consequently, the only as yet unresolved issue is whether the fact that DeSalvo testified under a state grant of immunity alters the analysis.

New York law confers automatic transactional immunity on those compelled to testify with the exception for perjury in the proceeding in which the testimony is compelled. *See* N.Y.CPL § 190.40. That immunity does not, however, provide so broad a shield to the defendant in this case as appears.

Testimony given before a state grand jury under a state grant of transactional immunity enjoys only use and derivative-use immunity in federal court. *United States v. Gallo*, 863 F.2d 185, 190 (2d Cir. 1988), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989). The court reached that conclusion despite the fact that at the time of state grand jury testimony (1968) both state and federal statutes provided transactional, rather than use, immunity for compelled testimony. *Gallo*, decided after *Kastigar* upheld the constitutionality of use immunity, thus demonstrates that federal courts will confer on state-immunized testimony no more protection than the fifth amendment demands. Since use immunity does not, as a matter of constitutional law, extend to prosecutions for perjury committed after the immunity was conferred, *Apfelbaum, supra,* the grand jury was free to use so much of the state grand jury testimony as was rele-

vant and information derived from it in returning the instant indictment alleging perjury committed after the immunity was conferred.

Accordingly, even if the federal grand jury in fact relied on the state-immunized testimony to develop leads for proving that later statements were false, it has not overstepped constitutional bounds.

Finally, defendant requests a hearing to determine if a person likely to be called at trial as a witness against him, Steven DiJoseph, was exposed to DeSalvo's immunized testimony before the federal grand jury and tainted thereby. In support of this request, defendant cites *United States v. North*, 910 F.2d 843 (D.C.Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991). *North*, however, did not involve a prosecution for perjury, and thus the doctrine of use immunity applied with full force.

That distinction makes *North* inapplicable here. The D.C.Circuit reasoned that a witness' exposure to a defendant's immunized testimony might render his testimony inadmissible under *Kastigar* because, like the defendant's own testimony, it "is also *evidence* that is to be considered by the grand jury or the trial jury. When the government puts on witnesses who refresh, supplement, or modify that evidence with compelled testimony, the government uses that testimony to indict and convict. The fact that a government violates the fifth amendment in a circuitous or haphazard fashion is cold comfort" to the accused. *Id.* at 860. In short, this "most expansive reading of the Fifth Amendment to date regarding the evidentiary use of immunized testimony," *United States v. Helmsley*, 941 F.2d 71, 82 (2d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992), maintained that a witness exposed to a defendant's immunized testimony may, however subtly and indirectly, place that immunized evidence before a grand or petit jury through his own testimony. Because § 6002's perjury exception made the immunized testimony in the instant case a proper subject for grand jury examination, defendant's argument

that its indirect admission through DiJoseph must pass a more demanding test must be rejected.

## DISMISSAL OF OBSTRUCTION OF JUSTICE COUNTS

■ Defendant moves to dismiss the indictment's six counts of obstruction of justice, 18 U.S.C. § 1503, because they rest on evidence inadmissible under *Kastigar* and 18 U.S.C. § 6002.

As already mentioned, the federal immunity statute provides that testimony compelled pursuant to a grant of immunity is inadmissible except in "a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." 18 U.S.C. § 6002. Defendant contends that a prosecution for obstruction of justice does not fall within any of those three exceptions.

Defendant candidly acknowledges that all courts which have passed on the issue have decided that a prosecution for obstruction of justice is one for "otherwise failing to comply with the order" compelling testimony. *See, e.g., United States v. Brimberry*, 779 F.2d 1339 (8th Cir.1985); *United States v. Black*, 776 F.2d 1321 (6th Cir.1985); *United States v. Caron*, 551 F.Supp. 662 (E.D.Va.1982), *aff'd without opinion*, 722 F.2d 739 (4th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). Defendant also acknowledges that the Second Circuit affirmed, although without discussion of the issue, a conviction for obstruction of justice based at least in part on otherwise immunized testimony. *See United States v. Mariani*, 851 F.2d 595 (2d Cir.1988); *see also United States v. Rastelli*, 870 F.2d 822, 836 (2d Cir.), *cert. denied*, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989).

Defendant nevertheless urges the Court to disregard this authority and dismiss these counts of the indictment based on the "clear wording" of § 6002. What is clear from § 6002 is that its language is "comprehensive" enough to "extend[ ] to any conduct aimed at frustrating the purpose of the grant of immunity," which would include obstructing justice. *United States*

*v. Gregory,* 611 F.Supp. 1033, 1037 (S.D.N.Y.1985) (Weinfeld, J.). This is a sensible interpretation of this language, given the purpose of the immunity exception. Where the witness obstructs justice or otherwise "impedes the truthseeking function of the tribunal," he has violated his part of the compelled testimony "bargain" in which he "agrees to aid the tribunal in its truthseeking function" in exchange for the government's agreement not to use the testimony against him. *United States v. Pisani,* 590 F.Supp. 1326, 1342 (S.D.N.Y.1984). Accordingly, defendant's motion to dismiss the obstruction of justice counts is denied.

## DISMISSAL OF PERJURY COUNTS REGARDING *EISEN* TRIAL BECAUSE DESALVO'S TESTIMONY AT THE TRIAL WAS IMMATERIAL

■ Defendant contends that his testimony at the *Eisen* trial was not material because the government, which called him, never expected him to tell the truth. As materiality is a necessary element of a false statement charge, 18 U.S.C. § 1623(a), *see United States v. Kiszewski,* 877 F.2d 210, 218 (2d Cir.1989), defendant argues that the Court must dismiss the false statement counts stemming from his trial testimony.

The Second Circuit has recently sets forth the standard for determining whether, as a matter of law, a statement made to a petit jury was material for false statement purposes: " 'The test of materiality is whether the false testimony was capable of influencing the factfinder in deciding the issues before [it].' " *United States v. Guariglia,* 962 F.2d 160 (2d Cir.1992) (quoting *United States v. Fayer,* 573 F.2d 741, 745 (2d Cir.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978)). "In evaluating materiality in this context, the focus properly is on the impact on the trier of fact." *Id.*

Here defendant argues that his trial testimony was immaterial since the government expressly offered the testimony as false in order to demonstrate the *modus operandi* of the Eisen firm. Because the prosecution knew in advance that the testimony was false, defendant reasons, the testimony could not have misled or influenced the jury. Defense counsel, in his affidavit supporting this motion, cites to portions of the government's opening and closing statements in *Eisen* urging the jury to treat DeSalvo's testimony as false.

Defendant's argument is without merit. DeSalvo concedes that at the trial, under compulsion, he testified about the *Mulnick, Miceli,* and *Pietrafesa* cases. The superseding indictment in *Eisen* makes clear that those three cases comprised instances of alleged racketeering activity, and thus testimony concerning them could have influenced the outcome on the RICO charges. Certainly the jury was "capable" of believing DeSalvo's alleged testimony exonerating the firm's conduct in those cases. In a case cited favorably by the *Guariglia* panel, the Eighth Circuit held that "[t]he perjured statement need not be material to any particular issue, but may be material to any proper matter of inquiry." *United States v. Sablosky,* 810 F.2d 167, 169 (8th Cir.1987), *cert. denied,* 484 U.S. 833, 108 S.Ct. 109, 98 L.Ed.2d 68 (1987). As the firm's conduct in those cases was a part of the indictment, it was a "proper matter of inquiry" for the jury.

Moreover, in another case cited favorably in *Guariglia,* the Fifth Circuit clarified the "appropriate inquiry" for a court examining materiality: whether the jury *"might* have made a different decision if the truth had been told." *United States v. Salinas,* 923 F.2d 339, 341 (5th Cir.1991). Certainly, had DeSalvo come forward with what the United States alleges is the truth of how the Eisen firm conducted the three cases involved here, then that also "might" have made a difference in the jury's decision-making.

The fact that the government argued that the testimony was false and yet called DeSalvo as a witness is of no moment. Although the United States Attorney's office might relish a world in which juries believe everything the prosecution suggests, certainly on the eve of trial no one could know for certain how the jury would

react to DeSalvo's testimony. In all likelihood DeSalvo earnestly endeavored to convince the jury of his veracity. Had both sides agreed in the presence of the jury that DeSalvo's testimony was false, then this might be a different case. But the sides stridently disagreed about the truthfulness of the testimony.

This reduces DeSalvo's argument to the suggestion that somehow the fact that the government called him placed questions about the truth of his testimony beyond doubt in the jury's eyes. The poverty of this argument is obvious: had DeSalvo testified for the defense, with the government eliciting the testimony that it did on cross-examination and then urging the jury to disbelieve DeSalvo's statements, defendant would not have the temerity now to suggest that his testimony was so incredible that it was incapable of influencing the jury. Materiality should not turn on who called the witness as a matter of trial strategy.

In sum, DeSalvo testified about events that of necessity occupied an important place in the jury's mind. If in fact he proffered false testimony about those events, then the testimony's relevance to the issues litigated in the *Eisen* trial and the fact that the parties at the time differed as to its veracity make the testimony material.

*Guariglia* is not, as defendant argues, to the contrary. There the Second Circuit had no trouble concluding that the fact that Guariglia's false testimony in a prior case was material. The court had already decided in that prior case that, because of the presence of Guariglia's false testimony, the convictions obtained had to be vacated. The Second Circuit made it clear that those facts presented an easy case for materiality analysis but did not enunciate any new standard of materiality that benefits defendant here.

### SEVERANCE

■ Defendant moves severance of counts pursuant to Rule 8(a) of the Federal Rules of Criminal Procedure and pursuant to Rule 14. Defendant makes the same

argument in support of relief under both Rules: that the *Mulnick, Miceli,* and *Pietrafessa* charges should be tried separately, because trying them together will prevent the jury from focusing its attention on any one of the cases with the attention the law demands.

In support of this claim defendant again cites *United States v. Doe,* 819 F.2d 11, 11 (1st Cir.1987), for the proposition that his "immunized testimony in a future appearance before the grand jury cannot be used as evidence to prove a charge of perjury in giving false testimony in his prior appearance." He fears that evidence tending to prove one instance of wrongdoing will spillover in the jurors' minds and contaminate their thinking about the other counts, constituting an improper use of later, immunized testimony to convict him of a prior act of alleged perjury.

In fact, the problem identified here by defendant is no different than that confronted in any trial in which multiple counts are tried together: namely, that the jury will improperly use evidence of one crime as evidence of bad character to resolve issues presented by other crimes presented to the jury for consideration. There is, however, no particular reason to think that the problem cannot be dealt with by the usual instructions requiring separate consideration of counts. As already noted, there is no argument made that evidence of the later testimony might be used for a purpose more panted than proving bad character, as would be the case if later testimony recounted one version of events which impeached an earlier account, or evidenced a motive for earlier perjury, or eliminated a defense of accident or mistake. Each appearance, as already noted, involved testimony about a different case. Even if the later testimony was theoretically useful to prove intent or lack of mistake, there is no reason to doubt that blanket instructions absolutely forbidding jurors from considering evidence from later appearances to resolve issues concerning earlier ones will be effective.

In all events, defendant's reliance on *Doe* is misplaced. While *Doe* indeed states that

immunized testimony cannot be used in a prosecution for past perjury "merely because on both occasions the testimony had been compelled by the same immunity order," *id.* at 12, the federal immunity statute appears to be to the contrary.

That statute speaks of testimony compelled under "an order"; it does not speak of the number of "appearances" that a person makes pursuant to that order. 18 U.S.C. § 6002. *Apfelbaum* itself speaks of testimony given "during the course of the immunized testimony," 445 U.S. at 122, 100 S.Ct. at 952, and "testimony from the immunized proceeding," *id.* at 128, 100 S.Ct. at 956. Similarly, in *Berardelli*, a case relied on by the defense, the Second Circuit spoke of witnesses "testifying under a grant of immunity." 565 F.2d at 29. The government persuasively argues that defendant's "appearance" theory knows no limit: every entry into and exit from the grand jury room might constitute a separate "appearance." While it might yield to the facts of a particular case, the use of the life of the order to define the scope of immunity makes sense in most cases. Where an order to testify before a grand jury has no expiration date, that same order remains valid "so long as the grand jury continues its investigation." *In re Di Bella,* 518 F.2d 955, 958 (2d Cir.1975).

Since DeSalvo testified during his three appearances before the grand jury under one immunity order, as a matter of law he stands indicted for multiple counts stemming from the same episode. Thus, defendant's distinction between later and earlier testimony only serves to distinguish testimony given before the grand jury from testimony given before the petit jury. Since the parties agree that this testimony was largely duplicative, it is hard to envisage a use of the later testimony before the petit jury to prove the truth of the indictment insofar as it faults DeSalvo for giving false testimony at the earlier proceeding before the grand jury which cannot be prevented by appropriate instructions.

Nothing in the Federal Rules of Criminal Procedure affords DeSalvo any greater relief. Rule 8 states:

Two or more offenses may be charged in the same indictment of information in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act of transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Defendant's "purpose at this juncture to formally raise the procedural misjoinder argument under Rule 8(a)," Def.'s Br. at 8, provides no reason to disregard the plain language of Rule 8.

Under that language, it is clear that the multiple counts here "are of the same or similar character," if not being "parts of a common scheme or plan." *See United States v. Turoff,* 853 F.2d 1037, 1042 (2d Cir.1988) (noting disjunctive character of rule). "The use of Rule 8(a) ... inevitably involves some danger of prejudice.... Despite this potential for unfairness, 'Congress has authorized consolidation in the belief that public considerations of economy and speed outweigh possible unfairness to the accused.'" *Id.* at 1043. Where the indictment meets the requisites of the Rule, joinder under Rule 8(a) is warranted. *See, e.g., United States v. Arocena,* 778 F.2d 943, 949 (2d Cir.1985) (similar character of multiple bombing attempts), *cert. denied,* 475 U.S. 1053, 106 S.Ct. 1281, 89 L.Ed.2d 588 (1986).

Another court has also recently held that multiple counts of making false statements are acts "of a similar character" and refused to sever one perjury count from four others. *United States v. Guariglia,* 757 F.Supp. 259, 263 (S.D.N.Y.1991). That court also noted that the Second Circuit has found Rule 8(a) joinder appropriate "solely on the grounds of the similarity of offenses." *Id.* (citing *United States v. Werner,* 620 F.2d 922, 926 (2d Cir.1980)). The multiple counts need only be "similar" in character, defined as " '[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.' " *Werner,* 620 F.2d at 926 (quoting *Webster's New Int'l Dict.* (2d ed.)

■ Joinder being proper under Rule 8(a), I turn to Rule 14. That Rule provides:

If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

"A motion for severance under Rule 14 is addressed to the discretion of the district court." *Arocena,* 778 F.2d at 949 (citations omitted). To prevail, a defendant seeking severance must convince the court that he would suffer not just some prejudice, which Rule 8 allows, but *"substantial* prejudice." *Werner,* 620 F.2d at 928.

Defendant argues that the "mere presence of the allegations" in connection with the *Mulnick* and *Pietrafesa* cases will inflate the credibility of DiJoseph's testimony regarding the *Miceli* case. Then, in a dialectical twist, he contends that DiJoseph's testimony regarding *Miceli* will aid "the wholly circumstantial, weak and possibly insufficient allegations" made with respect to the *Mulnick* and *Pietrafesa* cases.

■ There is simply no reason to credit defendant's contention that he will suffer substantial prejudice from the joinder of claims. The facts of this case are simple and straightforward. Each instance of alleged perjury or obstruction of justice is clearly identified in the indictment. Only one defendant stands accused. A conclusory statement that the jury might "transfer" elements of one crime to another, such as defendant makes here, does not justify severance under Rule 14. *United States v. Sigalow,* 624 F.Supp. 499, 501 (S.D.N.Y. 1986). Additionally, the Court will instruct the jury that, to convict, it must consider the counts separately and find that the government has proven each case beyond a reasonable doubt. *Id.* at 501.

In *United States v. Rastelli,* 870 F.2d 822, 836 (2d Cir.1989), the Second Circuit rejected defendant's argument that allowing prosecution for perjury to proceed along with RICO counts against that defendant and others impermissibly tainted or prejudiced the jury with regard to its deliberations over the perjury count. This much less complex case, involving fewer and less dramatic facts, does not present any threat of substantial prejudice from joinder. As defendant acknowledges, "separate trials, broken along the lines of each of the three [Eisen firm] cases, would be unwieldy and an unfair drain on the Court's resources," Def.'s Br. at 9.

### SURPLUSAGE IN THE INDICTMENT

Defendant moves pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure to strike statements in the indictment that he considers surplusage.

Rule 7(d) allows the court "on motion of the defendant" to "strike surplusage from the indictment or information."

■ The government has correctly identified this circuit's standard for considering 7(d) requests.

Motions to strike surplusage from an indictment will be granted only where the challenged allegations are "not relevant to the crime charged and are inflammatory and prejudicial." ... "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken."

*United States v. Scarpa,* 913 F.2d 993, 1013 (2d Cir.1990) (citations omitted). "This standard is an 'exacting' one and 'rarely satisfied.'" *United States v. Eisen,* CR–90–00018, slip op. at 21 1990 WL 164681 (E.D.N.Y.1990) (citation omitted).

Defendant seeks to strike the following paragraphs: 3, 4, 5, 6, 7, 12, 15, 20, 21, 22, 23, 27, 31, 36, and 38. Defendant argues that these paragraphs attempt to introduce into this case information concerning other crimes, which he contends are immaterial to the perjury and obstruction of justice counts and prejudicial. The government responds that the indictment recites only relevant facts in a dry, non-inflammatory style.

None of the allegations in the indictment that are complained of require redaction of the indictment under *Scarpa.* Each allega-

tion is relevant to the crimes charged, quite apart from questions of prejudice.

For ease of discussion, I divide defendant's allegations into two broad groups: those presented by way of introduction to the charging paragraphs of the indictment and those involving allegations concerning the individual *Eisen* cases.

 The introductory allegations are entirely appropriate. Defendant objects to reference of the matters under investigation by the *Eisen* grand jury and to the issues before the *Eisen* petit jury, which included mail fraud, witness bribery, and subornation of perjury.

Clearly, this evidence is relevant to the obstruction of justice counts, 18 U.S.C. § 1503, since it accurately describes the nature of the investigation and trial. To prove its obstruction of justice case the government must establish "that a witness has deliberately attempted to frustrate a grand [or petit] jury's investigation." *United States v. Langella*, 776 F.2d 1078, 1082 (2d Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). The nature of that investigation is relevant to a determination whether the defendant attempted to frustrate its completion. Moreover, "[t]he use of other acts evidence to establish the background of a scheme to obstruct justice is proper and often crucial in a § 1503 proceeding." *United States v. Arnold*, 773 F.2d 823, 833 (7th Cir.1985).

In *United States v. Langella*, 776 F.2d at 1081, the Second Circuit denied a defendant's argument that "background paragraphs" in an obstruction of justice indictment were prejudicial and should have been stricken. The court agreed with the government that those paragraphs, which mentioned a murder and narcotics distribution, were necessary "to inform the jury of the scope and nature of the grand jury's investigation." *Id; see also United States v. Ruggiero*, 934 F.2d 440, 448–49 (2d Cir. 1991) (affirming use of other crimes evidence to demonstrate defendants' motives for obstructing justice).

The principal case cited by the defendant, *United States v. Poindexter*, 719 F.Supp. 6 (D.D.C.1989), is not to the contrary. In

that case the court dismissed counts against a co-defendant, who had already been severed from the trial, that were irrelevant to the prosecution of the remaining defendant. *Id.* at 9–10. Here there are no counts against any other defendant, and the background information mentioning other actors is relevant to the case against DeSalvo.

Defendant's other case, *United States v. Hubbard*, 474 F.Supp. 64 (D.D.C.1979), is closer to the point. In that case the court indeed struck "the litany of offenses the grand jury was investigating" as "prejudicial and irrelevant." *Id.* at 83. There, however, the obstruction of justice count related to conduct specified elsewhere in the indictment. Consequently, the "litany" of offenses added no background or context for the rest of the indictment. Here, the indictment's background material is relevant to any understanding of what the defendant did, why he did it, and his state of mind.

Defendant also objects to use of the identifying term "the *Eisen*" (grand) jury and suggests instead substitution of the term "a federal" (grand) jury. To fix the context for the issues, the indictment would have to mention "a federal (grand) jury investigating the *Eisen* defendants" or else risk confusing the jury as to the circumstances under which DeSalvo gave testimony. Clearly, there is no appreciable difference between that statement and the shorthand term "the *Eisen*" jury.

Defendant also cites cases condemning the use of the phrase "among other things" in an indictment. *See, e.g., Hubbard*, 474 F.Supp. at 82; *United States v. Brighton Bldg. & Maintenance Co.*, 435 F.Supp. 222, 230 (N.D.Ill.1977), *aff'd*, 598 F.2d 1101 (7th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). Defendant's use of these cases is somewhat curious. He apparently does not mean to suggest that the court should strike expressions of this sort where they appear in this indictment, *see* Superseding Indictment ¶¶ 3, 5 & 6, but only contends that if a court strikes these vague statements than the "much more specific" language detailing the scope of

the *Eisen* investigation and trial must constitute prejudicial surplusage. Def.'s Br. at 13.

The argument is a non-sequitur. The cited cases found the open-ended language objectionable precisely because it was vague and thereby insinuated that "the crime alleged had great and hidden implications." *Brighton Bldg.*, 435 F.Supp. at 222. Limited and clearly stated implications thus cannot present a problem under the rationale of those cases.

Defendant fares no better with regard to the case-specific allegations. Defendant complain of allegations that concern Eisen firm misdeeds about which the indictment charges that DeSalvo lied. For example, paragraphs 20–22 explain how the Eisen firm concocted evidence for the *Mulnick* case.

Facts supporting those claims are relevant in this case, at least when taken in connection with paragraph 15 (to which defendant also objects) which alleges that DeSalvo "and others at the Eisen firm devised a scheme to win the *Mulnick* case by concocting a false version of the accident and presenting false testimony at trial." Indictment counts two and four charge DeSalvo with obstructing justice by giving false testimony and withholding testimony. If DeSalvo, under an order compelling his testimony, testified falsely or withheld information concerning this scheme, then a jury can convict him of obstructing justice. Evidence supporting these facts could also be relevant to bolster the government's allegations in counts one and three alleging perjury in that they help explain the motive for, and thus make more likely, the underlying fact concerning which DeSalvo is accused of giving false testimony.

Defendant argues that prior statements of prosecutors and bills of particulars provided in the *Eisen* trial establish that individuals other than DeSalvo actually manipulated testimony or tendered bribes. Whether this is true or not, the government need only demonstrate that DeSalvo knew of this misconduct at the time he provided testimony. By means of paragraph 15, the indictment alleges knowledge of these misdeeds, and thus creates an issue of fact.

In short, it would be hard to tell if defendant lied or otherwise attempted to impede the truthseeking process without knowing the truth of the matter about which the government alleges he lied or dissembled. The same can be said of paragraphs 27 and 36 regarding the *Miceli* and *Pietrafessa* cases, respectively. Since these allegations are relevant, the Court will not strike them as surplusage.

Similarly, defendant objects to reference in the indictment to the fact that these Eisen firm cases were settled for cash and the amount of those settlements. Again, evidence proving these allegations is relevant to demonstrate the motive for the Eisen firm's fabrication of cases and to establish the truth of the matter about which DeSalvo is alleged to have lied.

Finally, defendant objects to the government's embellishing the statements that he made to the grand jury by inserting words, in brackets, into the recitation of those statements. For example, a questioner inquired as to DeSalvo's response to receiving certain information "in this case." The indictment reads "in this [the *Wise*] case." The government has made a nearly identical modification to another question, inserting the name *"Mulnick"* in brackets.

Whether the bracketed language accurately conveys the intent of the questioning is a question for the jury to decide. Defendant is entitled to argue at trial that the government misunderstands the exchange that took place between a federal prosecutor and himself on September 14, 1989, before the grand jury. The brackets simply convey in a straightforward way the government's contention as to the meaning of the exchange and does not mislead anyone as to what was actually said. Accordingly, there is no reason to strike the bracketed material.

Additionally, defendant moves for substitution of the expression "making a false statement" for the word "perjury" in the titles of various paragraphs of the indictment. Defendant notes that the government has charged him with violating 18

U.S.C. § 1623(a), not 18 U.S.C. § 1621. The government does not respond to this argument, perhaps because it is buried in footnote 26 of defense counsel's lengthy affidavit in support of the motion. Neither title perfectly captures all of the elements of a section 1623 violation, but the title used in the indictment is unlikely to confuse or mislead any juror properly instructed.

## ALLEGEDLY FALSE STATEMENTS ARE LITERALLY TRUE

Defendant argues that five statements appearing in three counts are literally true and therefore cannot form the basis of prosecution under *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). *See also United States v. Lighte*, 782 F.2d 367, 372 (2d Cir.1986) (holding that *Bronston*, an 18 U.S.C. § 1621 case, applies to 18 U.S.C. § 1623).

*Bronston* held that a person could not be convicted of perjury for giving a "literally true but unresponsive answer" under oath. 409 U.S. at 362, 93 S.Ct. at 602.

■ The test for perjury is "an objective one. The jury should determine whether the question—as the declarant must have understood it, giving it a reasonable reading—was falsely answered.... In determining the meaning a declarant gives to a question, a jury need not examine the isolated segments of the question and answer exchange, but may view it within the context of the entire line of questioning." *Lighte*, 782 F.2d at 372–73. Accordingly, the Second Circuit has, "since *Bronston*, continued not only to examine the literal truth or falsity of defendant's words, but also to examine the context in which these words were spoken." *United States v. Schafrick*, 871 F.2d 300, 303–04 (2d Cir.1989).

■ With those principles in mind I turn to the first four challenged statements. These statements, which appear in counts one, three, and seven, are similar in that defendant objects to each of them on the grounds that the questioner's use of the turn of phrase, "It's your testimony ...?" indicates that DeSalvo testified only about what he had said earlier, not about the veracity of what he had said earlier. Thus, defendant takes issue, for example, with being charged in count one for his part in the following exchange:

Q. It's your testimony that you had no knowledge that your cousin happened to be an eyewitness in two separate cases that your law firm was handling?

A. He was not an eyewitness in the Wise case, he was an eyewitness in the Mulnick case.

Defendant argues that by this answer he did not state that his cousin was in fact an "eyewitness" to certain events in the *Mulnick* case but rather that he had in fact so testified. "When a witness testifies that 'A' is a fact, and then is asked if he has testified that 'A' is a fact, and he says yes, such response is truthful, regardless of whether 'A' is a fact." *Lighte*, 782 F.2d at 374.

Defendant's argument cannot support dismissal of these portions of the indictment. Because typically "[w]hether an answer is literally true raises a factual question for the jury," *id.* at 371; *see also United States v. Friedman*, 854 F.2d 535, 560 (2d Cir.1988), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989), defendant is asking the court to determine that the issue is so beyond doubt that it does not present a triable question of fact.

Here a triable issue clearly exists. In context, DeSalvo can be understood to respond to the question about the underlying facts, not whether he had previously given certain testimony. The government points to a number of cases, principally *United States v. Lamp*, 779 F.2d 1088, 1093 & n. 1 (5th Cir.), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986), upholding perjury prosecutions based on responses to questions using the locution, "It is your testimony ...?" That phrase is often used to pin a witness down on a particular point or to summarize a series of other incomplete answers in a cogent fashion and not

to refer to whether that precise statement had been the witnesses testimony at some prior time. Other, more specific phrases, such as *"was it your testimony"* or *"have you previously testified"* or "you testified," often serve the purpose of directing the witness' attention to testimony given on some other occasion.

In *Lighte*, the Court of Appeals found that the witness referred the questioner to his prior testimony. The questioner asked, "Am I to understand that you permitted Mr. Diaz to open an account with your name without asking why or what it's going to be used for?" The witness responded, "Yes, as a trust account, yes." 782 F.2d at 371 n. 1 & 374. *Accord United States v. Landau*, 737 F.Supp. 778, 784 (S.D.N.Y.1990) (question beginning with "you've told us ..." considered mere reference to prior testimony, not testimony as to underlying fact); *but see United States v. Long*, 697 F.Supp. 651, 660 (S.D.N.Y.1988) (refusing to dismiss indictment in face of *Bronston* challenge where defendant was accused of falsely answering a question that began with words, "Do I understand ...?"). While *Lighte* is a good deal more similar to the instant case than the government allows in its brief, it does not involve the same phraseology that now confronts the Court.

Testimony that immediately preceded the question complained of, *see Lighte*, 782 F.2d at 373 (extrinsic evidence admissible to show how witness understood question), may well persuade the jury beyond a reasonable doubt that DeSalvo treated the question as one going to the truth of the underlying matter, not a mere characterization of testimony he had already given. Moments before the challenged exchange occurred, for example, the following transpired:

Q. Is it your testimony that you received a file in a case a few days prior to trial and prior to that receipt of the file you knew nothing about the case?

A. Absolutely.

Q. And when you reviewed the file, you discovered that your cousin was the witness who picked up the plaintiff in the parking lot, is that right?

A. Absolutely.

Q. And after that coincidence, you called your cousin, is that right?

A. Absolutely.

Tr. of Grand Jury Proceedings, Sept. 14, 1989, Def.'s Ex.H at 10. The questioning, proceeding from inquiries that are clearly about the underlying facts to the question prefaced by the "is it your testimony" language, permits a reasonable juror to draw the conclusion beyond a reasonable doubt that DeSalvo understood that he was speaking to the underlying facts by sharpening his recitation of them rather than simply acknowledging that he had in fact previously uttered words to the same effect.

The government's alternative arguments based on *Schafrick* are, however, unpersuasive. In *Schafrick* the Second Circuit noted that *Bronston* turned on the existence of an answer that was not just true but also unresponsive to the question. Thus, "[i]f an answer is responsive to the question, then there is no notice to the examiner and no basis for applying *Bronston*." *Schafrick*, 871 F.2d at 303. Here the question concerns not the answer so much as the question. Did the questioner, given his linguistic choices, ask DeSalvo about his prior testimony or about the underlying facts? *Bronston* "prevents an examiner from resolving ambiguities in the elicited testimony with a perjury prosecution after the fact." *Id.*

The government also points out that the *Schafrick* panel distinguished *Bronston* on the basis that the answer in that case was not false only by "negative implication" but from its "clear meaning in context." *Id.* Again, the primary concern in the instant case is with the question, not the answer.

█ Defendant also contends that the following exchange, included in count three, is literally true:

Q. Isn't it correct, Mr. DeSalvo, that in connection with the Mulnick case you agreed with your cousin, your wife's

cousin, Matthew Norrito, to testify as a phony witness?

A. Absolutely wrong.

DeSalvo contends that this question asked whether DeSalvo himself had agreed to act as a phony witness, not whether he and Norrito agreed that Norrito would assume that role.

When viewed in context, defendant's argument for dismissal of this count of the indictment is without merit. The transcript of DeSalvo's *Eisen* trial testimony, reproduced as Def.'s Ex. R, provides ample basis for a juror to conclude that the question asked was whether DeSalvo and Norrito agreed that Norrito would testify as a phony witness, that DeSalvo so understood it, and that he intentionally answered falsely. *See Long,* 697 F.Supp. at 660 (refusing to dismiss indictment once an apparently ambiguous question was viewed in light of preceding line of questions).

Defendant cites *United States v. Bell,* 623 F.2d 1132 (5th Cir.1980), as an example of a case overturning a conviction because of the prosecutor's vague question. That case, however, turned on the fact that "in the context in which it was given" the examiner's question was ambiguous. *Id.* at 1136–37. The opposite situation presents itself here: a somewhat ambiguous question that "in the context in which it was given" becomes much clearer. In most such circumstances, noted the *Bell* court, ambiguity presents a jury question. *Id.* at 1136 (citing cases).

## BILL OF PARTICULARS

■ Defendant moves for a bill of particulars providing additional detail to the indictment's allegations. The government has agreed to provide additional information with regard to one of the nine requests for information.

The principles governing requests for a bill of particulars are well settled. A bill is appropriate to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy

should he be prosecuted a second time for the same offense." ... The prosecution need not particularize all of its evidence.... The decision to grant or deny a bill of particulars is within the sound discretion of the district court. *United States v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988). *See also United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987). The Second Circuit has recently cautioned that "[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). The test "is not whether the information sought would be useful to the defendant but rather whether it is necessary to a defense." *United States v. Sierra–Garcia,* 760 F.Supp. 252, 268 (E.D.N.Y.1991).

■ Defendant has not met this standard. In a case alleging that defendant made a false statement with regard to debts owed to him, a district court denied the request for a bill of particulars that sought specification "whether the government's position is that defendant was not owed a debt, or whether the amount of the debt was misstated." *United States v. Ruiz,* 702 F.Supp. 1066, 1070 (S.D.N.Y. 1989), *aff'd in part, rev'd in part,* 894 F.2d 501 (2d Cir.1990). The court noted that the specificity of the indictment, other opportunities for discovery, and "simplicity of the counts" avoided problems of unfair surprise. *Id.* at 1070–71.

■ Defendant's requests in this case are similar to those in *Ruiz.* For example, defendant's first request reads as follows:

State if it is the government's claim that, at the times of his grand jury testimony and trial testimony, DeSalvo knew or believed that Norrito was a false witness at the *Wise* trial; if so, is it the government's claim that DeSalvo requested Norrito to give false testimony at the *Wise* trial or that DeSalvo knew or believed, at the time he requested Norrito

to testify at the *Wise* trial, as alleged in paragraph 11, that Norrito's testimony would be false in any material respect.

Defendant clearly seeks to discover not just the contours of the case—that DeSalvo told the grand and petit juries he had not participated in rigging trials with regard to three Eisen firm cases when in fact he had. Rather, defendant seeks in detail the sort of arguments that the government will make to bolster its arguments. "The government will not be compelled through a bill of particulars to disclose the manner in which it will prove the charges or preview its evidence or legal theory." *United States v. Facciolo*, 753 F.Supp. 449, 451 (S.D.N.Y.1990). Thus, the government need not further particularize its allegations of obstructing justice before a grand jury where the indictment is straightforward and provides sufficient background information about the grand jury investigation and the details of the obstruction. *United States v. Schwimmer*, 649 F.Supp. 544, 550–51 (E.D.N.Y.1986).

The descriptions provided here hardly skimp in detail. For example, defendant asks:

> State if the government will claim that Helen Gaimari was not a true witness, in any respect, with regard to the *Pietrafessa* case.

Yet, as defendant acknowledges, the indictment already states:

> The defendant FRANK DeSALVO and Gaimari agreed that Gaimari would testify falsely, and she did testify falsely, that she had previously tripped over the same sidewalk defect as Pietrafessa, that she had previously complained in vain about the sidewalk defect to the staff of the Grand Union supermarket, that she had come upon Pietrafessa immediately after Pietrafessa had fallen in the sidewalk defect, and that Gaimari had given her name to Pietrafessa immediately after the accident.

The availability of relevant information from the record of the *Eisen* trial also recommends against compelling a more detailed statement. *Id.* at 551 n. 6. While it is true that access to too much evidence can frustrate preparation of a defense as much as too little, *see Bortnovsky*, 820 F.2d at 574–75, here the relevant information comprised only a small portion of the total evidence adduced at the *Eisen* trial. Moreover, unlike the situation in *Bortnovsky*, where the defendant had only four days to fashion a defense out of 4,000 documents, here the defendant has had plenty of time to prepare.

Defendant also requests details with regard to who the government alleges said certain things and who it will call at trial. Because the government need not provide "evidentiary detail," *Torres*, 901 F.2d at 234, the government need not divulge "the names of government witnesses." *United States v. Davis*, 714 F.Supp. 853 (S.D.Ohio 1988), *aff'd*, 899 F.2d 1221 (6th Cir.1990).

*Bortnovsky* is entirely consistent with this result. There the Second Circuit found that defendants, charged with staging burglaries and filing false insurance claims, were entitled to a bill of particulars where the indictment did not identify the dates of the burglaries or the identity of the fraudulent documents. 820 F.2d at 574. The much narrower indictment here specifically identifies the allegedly false statements, with the times at which they were made.

Defendant also contends that RICO cases typically demand more specificity than provided here and that, although not a RICO case, the underlying acts that the indictment accuses DeSalvo of lying about are so like RICO counts that they were RICO counts in the *Eisen* trial. The kind of specificity in those cases, however, is not evidentiary specificity but identification of the predicate acts. Here, the government has met its burden by identifying three discrete Eisen firm cases and the individuals who are alleged to have turned the trials of those cases into shams.

## ADMISSIBILITY OF GRAND JURY TESTIMONY

Defendant, citing *United States v. Salerno*, 937 F.2d 797 (2d Cir.1991), *cert. granted*, —— U.S. ——, 112 S.Ct. 931, 117 L.Ed.2d 103 moves for a pretrial ruling on the admissibility of the grand jury testimo-

ny of Geraldine Morganti, an *Eisen* defendant.

The government does not dispute that *Salerno* makes admissible grand jury testimony of an unavailable witness. *Id.* at 807. The government does argue that any such ruling is premature because the Supreme Court, which has taken up the case, might reverse; and because the United States might compel Morganti's testimony under a grant of immunity or because the Second Circuit might overturn her conviction, she could conceivably become an available witness subject to live examination.

The application at this time is premature. If *Salerno* is still the law at the time of trial and if Morganti is unavailable, then defendant would appear to be entitled to offer her the testimony at that time. In the absence of any compelling reason to rule earlier, I decline to do so.

## CONCLUSION

Accordingly, the defendant's motion is denied in all respects.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.