**UNITED STATES of America, Appellee,**

v.

**Frank DeSALVO, Defendant–Appellant.**

No. 650, Docket 93–1330.

United States Court of Appeals,
Second Circuit.

Argued Dec. 22, 1993.

Decided April 8, 1994.

Richard E. Mischel, New York City, for defendant-appellant.

Faith E. Gay, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Before: TIMBERS, WINTER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Frank DeSalvo appeals from a judgment entered in the United States District Court for the Eastern District of New York (Charles P. Sifton, *Judge*) convicting him, after a jury trial, of four counts of perjury, in violation of 18 U.S.C. § 1623(a), and four counts of obstructing justice, in violation of 18 U.S.C. § 1503. Judge Sifton sentenced DeSalvo to 30 months in prison, which reflected a three-level enhancement for causing a "substantial interference with the administration of justice." U.S.S.G. §§ 2J1.2(b)(2) & 2J1.3(b)(2).

In this appeal, DeSalvo challenges the manner in which the government used his prior immunized testimony. DeSalvo argues that the government violated the federal immunity statute and the Fifth Amendment's self-incrimination clause when it used some of his immunized testimony to prove that other "noncontemporaneous" immunized testimony was false. DeSalvo also challenges the sentencing enhancement.

We affirm.

## BACKGROUND

In the early 1980s, Frank DeSalvo was a trial lawyer with the now infamous personal injury firm of Morris J. Eisen, P.C. The Eisen firm dishonored the legal profession by routinely bribing witnesses and manufacturing evidence to win lawsuits or exact favorable settlements. After a federal trial, seven of the firm's lawyers, investigators and administrators were convicted on racketeering charges. *See United States v. Eisen*, 974 F.2d 246 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993).

Although DeSalvo himself was not prosecuted along with his colleagues, his central role as an Eisen insider did not escape the attention of the federal prosecutors. DeSalvo's conviction stems from false testimony he gave under oath during the investigation and prosecution of the Eisen defendants. The facts surrounding DeSalvo's testimony are largely undisputed.

### A. *DeSalvo's State and Federal Testimony*

In September 1987, a New York state grand jury was empaneled to investigate the Eisen firm. It then compelled DeSalvo's testimony under a grant of transactional immunity. *See* N.Y.C.P.L. § 190.40(2). DeSalvo appeared and testified about his background and employment with the Eisen firm, and about his participation as a trial lawyer in one Eisen case. DeSalvo was not charged with lying before the state grand jury.

Two years later, a federal grand jury subpoenaed DeSalvo to testify in a federal investigation of the firm. Pursuant to 18 U.S.C. § 6002, Judge Eugene Nickerson granted DeSalvo immunity "as to all matters about which he may be interrogated before the [Eisen] Grand Jury." In all, DeSalvo appeared three times before the Eisen federal grand jury in the fall of 1989. On each occasion, he denied complicity in the Eisen firm's crimes.

In his first federal grand jury appearance on September 14, DeSalvo claimed that it was pure coincidence that his cousin testified as an eyewitness on behalf of Eisen clients in two unrelated personal injury cases.

In his second appearance, one week later, in testimony about a different case, DeSalvo denied colluding with two firm investigators who, during a personal injury trial, fabricated an account of a defense witness's whereabouts. This account persuaded the trial judge that the witness was available to be called and thus his deposition testimony should be excluded.

In his third and final appearance before the Eisen grand jury, DeSalvo denied ever knowing that a witness who testified in yet another of his cases was the mother of the Eisen firm's office manager.

In August 1990, the federal grand jury indicted the Eisen defendants, not including DeSalvo. The government, however, called DeSalvo to testify at the Eisen trial. DeSalvo appeared on December 20, 1990, and declined to answer the questions put to him, asserting his Fifth Amendment privilege against self-incrimination. In response, Judge Sifton entered a second federal immunity order pursuant to 18 U.S.C. § 6002,

covering "all matters about which [DeSalvo] may be interrogated at the [Eisen] trial." DeSalvo's trial testimony essentially tracked his federal grand jury testimony.

## B. *The Proceedings Below*

Following the government's successful prosecution of DeSalvo's colleagues, a federal grand jury indicted DeSalvo for perjury and obstruction of justice in connection with the testimony he gave during his three appearances before the federal grand jury (the "Eisen grand jury") and the trial jury (the "Eisen trial jury"). The government maintained that DeSalvo had repeatedly lied when he denied participating in any wrongdoing at the Eisen firm.

Before trial, DeSalvo moved to dismiss the indictment under the principles of *Kastigar v. United States,* 406 U.S. 441, 460, 92 S.Ct. 1653, 1664–65, 32 L.Ed.2d 212 (1972) (government has the burden to show that the evidence it proposes to use "is derived from a legitimate source wholly independent of the compelled testimony"). DeSalvo essentially argued that the federal grand jury which indicted him for perjury and obstruction should not have been presented with his prior state and federal immunized testimony. DeSalvo claimed that since his indictment alleged perjury committed on *four* separate occasions (*i.e.,* three appearances before the Eisen grand jury and one appearance before the Eisen trial jury), there was a danger that the grand jury weighing the perjury charges against him might have considered immunized testimony he gave in one appearance to prove the falsity of testimony he gave in another appearance. He also claimed that the government improperly used evidence derived from his immunized *state* grand jury testimony to indict him for lying before the *federal* grand and trial juries. The district court (Sifton, *J.*) dismissed DeSalvo's multifaceted argument, and denied DeSalvo's request for a *Kastigar* hearing, on the authority of *United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). *See United States v. DeSalvo,* 797 F.Supp. 159 (E.D.N.Y.1992).

The federal immunity statute expressly permits immunized testimony to be used in "a prosecution for perjury." 18 U.S.C. § 6002. Relying on the Supreme Court's interpretation of the perjury exception in *Apfelbaum,* Judge Sifton reasoned that "only 'the otherwise applicable rules of evidence' limit the use of immunized testimony in a perjury prosecution." *DeSalvo,* 797 F.Supp. at 163 (quoting *Apfelbaum,* 445 U.S. at 131–32, 100 S.Ct. at 957–58).

Accepting *arguendo* DeSalvo's premise— *i.e.,* that the three appearances before the *same* grand jury under the *same* immunity order constituted three *separate* grand jury proceedings—Judge Sifton nevertheless rejected DeSalvo's claim of prejudice because DeSalvo could point to no statement in the indictment that the government would prove perjurious by reference to inconsistent testimony given at another time. 797 F.Supp. at 163. Finally, Judge Sifton saw no reason why the government could not use leads derived from DeSalvo's state grand jury testimony to prove perjury committed before the federal juries. Accordingly, Judge Sifton denied DeSalvo's motion. The jury convicted DeSalvo on four counts of perjury and four counts of obstruction.

In calculating DeSalvo's sentence under the Sentencing Guidelines, Judge Sifton raised DeSalvo's base offense level from 12 to 15 because he found that DeSalvo's perjury and obstruction "resulted in substantial interference with the administration of justice." U.S.S.G. §§ 2J1.2(b)(2) (obstruction of justice); 2J1.3(b)(2) (perjury). Specifically, Judge Sifton found that DeSalvo's perjury and obstruction caused a substantial expenditure of government resources that would not have been needed had DeSalvo testified truthfully from the start.

DeSalvo now appeals.

## DISCUSSION

### I. *Use of Immunized Testimony*

 The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Consistent with the constitutional guarantee, a court may compel testimony under a grant of immunity so long as the testimony, and any

evidence derived therefrom, is not thereafter used against the witness "in any criminal case, *except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.*" 18 U.S.C. § 6002 (emphasis added). *See Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661. Despite the express exception permitting use of immunized testimony in a subsequent perjury prosecution, DeSalvo believes that the government violated 18 U.S.C. § 6002 and the Fifth Amendment when it indiscriminately used *all* of his immunized testimony to indict and convict him on multiple and overlapping perjury charges. To assess DeSalvo's nebulous, not to say inscrutable, grievance, we must plumb the depths of the perjury exception to the immunity statute, and parse DeSalvo's argument into manageable bytes.

Analysis begins with *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980), where the Supreme Court endeavored to harmonize the varying approaches taken by the lower courts as to the permissible uses of a witness's immunized testimony in a perjury prosecution. The Court rejected the view of the Seventh and Third Circuits, which had held that only the *"corpus delicti"* or "core" of the false statements charged in the perjury indictment could be used against the witness. 445 U.S. at 119–20, 100 S.Ct. at 951–52. The Court also rejected the approach of our Court, typified by *United States v. Berardelli*, 565 F.2d 24, 28 (2d Cir.1977), which had held that *false* immunized statements were admissible in a perjury prosecution, but *truthful* immunized statements were not. 445 U.S. at 119 n. 5, 100 S.Ct. at 951 n. 5. In sweeping terms, the Court held that in a perjury prosecution, "neither the [immunity] statute nor the Fifth Amendment requires that the admissibility of immunized testimony be governed by any different rules than other testimony." 445 U.S. at 117, 100 S.Ct. at 957.

A perjury indictment is not carte blanche to admit immunized testimony in all such prosecutions, however. As *Apfelbaum* explained, the perjury exception of 18 U.S.C. § 6002 is a "narrow" one precisely because immunized testimony "remains inadmissible in all prosecutions for offenses committed prior to the grant of immunity that would have permitted the witness to invoke his Fifth Amendment privilege absent the grant." *Apfelbaum*, 445 U.S. at 128, 100 S.Ct. at 956.

■ Accordingly, while *Apfelbaum* settled the dispute about *how much* of a witness's immunized testimony may be used in a prosecution for perjury committed during the course of that testimony (answer: all of it), it did not change the constitutional rules governing *when* such compelled testimony may be used: The rule remains that none of a witness's immunized testimony may be used in a prosecution for a crime (including perjury) that was "committed prior to the grant of immunity that would have permitted the witness to invoke his Fifth Amendment privilege absent the grant." *Apfelbaum*, 445 U.S. at 128, 100 S.Ct. at 956. In other words, nothing in *Apfelbaum* changed the principle that a "witness is entitled to claim the Fifth Amendment privilege if [his testimony] might reveal perjury in a prior proceeding." *In re Corrugated Container Antitrust Litig.*, 644 F.2d 70, 75 n. 7 (2d Cir.1981).

An example may help to illuminate the intersection of these rules and the permissible and impermissible uses of immunized testimony to prove perjury. Assume that a witness makes three sworn statements in a federal proceeding under a grant of use immunity. If one of those three statements is false, and the government then prosecutes for perjury, *Apfelbaum* teaches that neither the Fifth Amendment nor the immunity statute prohibits the admission of the remaining two statements in the perjury prosecution. (The trial judge could, of course, exclude those statements on other evidentiary grounds.)

In addition, it is likely that the government could use all three of the witness's statements in a prosecution for a perjury committed *after* the proceeding in which the three sworn statements were given. This is so because, at the time the witness was granted immunity in the earlier proceeding, the danger that he might commit perjury in some future proceeding "is not by itself sufficient to create a substantial and real hazard that permits invocation of the Fifth Amendment."

*Apfelbaum*, 445 U.S. at 131, 100 S.Ct. at 957 (citations and internal quotations omitted). Consistent with the Fifth Amendment, however, the government could not use *any* of the three statements to prove that the witness had committed perjury in some *prior* proceeding.

■ In sum, the Fifth Amendment: (1) permits the unrestricted use of a witness's immunized testimony in a prosecution for perjury committed during the course of that immunized testimony; (2) does not permit a witness to invoke the privilege on the ground that he anticipates committing perjury sometime in the future; and (3) prohibits the use of immunized testimony in a prosecution for any offense—including perjury—committed before the grant of immunity if the witness would have had a valid claim of privilege absent the grant.

With these principles as our template, we turn to consider the government's use of DeSalvo's immunized testimony.

**A.** *Use of DeSalvo's Federal Grand Jury Testimony*

■ DeSalvo contends that Judge Sifton should not have allowed the government to present to DeSalvo's grand and petit juries all the testimony DeSalvo earlier gave in his three appearances before the Eisen grand jury. We agree with Judge Sifton that *Apfelbaum* disposes of this argument. Under *Apfelbaum*, such testimony is freely admissible, limited only by the rules of evidence. *Apfelbaum*, 445 U.S. at 131, 100 S.Ct. at 957. No evidentiary objection having been raised, all of DeSalvo's immunized testimony given before the Eisen grand jury—both truthful and false, core and peripheral—was properly admitted to prove that DeSalvo committed perjury and obstruction during the course of that testimony.

We reject DeSalvo's argument that the government is constrained in its use of his grand jury testimony simply because the testimony was given on three different days. DeSalvo's testimony was given pursuant to the same immunity order and in the same grand jury proceeding. Accordingly, all the testimony DeSalvo gave before the Eisen grand jury was properly admitted in this prosecution for perjury and obstruction committed during the course of that proceeding.

**B.** *Use of DeSalvo's State Grand Jury Testimony*

■ DeSalvo's argument concerning the government's use of the immunized testimony he gave before the state grand jury in 1987 is more elusive. He concedes that testimony given under a state grant of transactional immunity earns only use immunity in a federal court. *See United States v. Gallo*, 863 F.2d 185, 190 (2d Cir.1988), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989). He claims, however, that federal prosecutors derived critical leads from that immunized testimony, and then used that evidence against him in the subsequent federal perjury prosecution. He concludes, therefore, that he was entitled to a *Kastigar* hearing to determine whether the government obtained the evidence to indict him from sources wholly independent of his immunized testimony. Again, we are not persuaded.

■ When a witness surrenders his constitutional right to remain silent in exchange for use immunity, the government keeps its end of the bargain by not thereafter using the witness's testimony in a way that would violate the Fifth Amendment right he was forced to relinquish. *See Apfelbaum*, 445 U.S. at 130, 100 S.Ct. at 956–57. "While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader." *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661. In federal court, therefore, DeSalvo receives the benefit of his state immunity bargain so long as the government's use of his immunized testimony does not exceed the scope of the Fifth Amendment privilege existing at the time he testified before the state grand jury. To measure the scope of that privilege, we ask whether DeSalvo would have been "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) (citations and internal quotations omitted). *See United States v. Quatermain*,

*Drax,* 613 F.2d 38, 41–43 (3d Cir.), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2923, 64 L.Ed.2d 812 (1980).

The Fifth Amendment would not have protected DeSalvo against the use of his state grand jury testimony in this future perjury prosecution: The risk that DeSalvo might be prosecuted for lying to a federal jury in 1989 would have been far too speculative to permit him to invoke the privilege in 1987. *See Apfelbaum,* 445 U.S. at 131, 100 S.Ct. at 957 ("[A] future intention to commit perjury or to make false statements ... is not by itself sufficient to create a substantial and real hazard that permits invocation of the Fifth Amendment.") (citations and internal quotations omitted). Accordingly, the Fifth Amendment does not prevent the use of DeSalvo's 1987 state grand jury testimony in this subsequent perjury prosecution "because, at the time he was granted immunity, the privilege would not have protected him against false testimony that he later might decide to give." *Apfelbaum,* 445 U.S. at 130, 100 S.Ct. at 957. *Accord United States v. Seltzer,* 794 F.2d 1114, 1120 (6th Cir.1986) ("[W]e hold that neither the fifth amendment nor the immunity statute prevent[ed] use of appellant's 1981 immunized testimony at his trial for perjury before the grand jury in 1983 because, at the time appellant was granted immunity in 1981, the privilege would not have protected him against false testimony he might later decide to give in either 1981 or 1983."), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987).

### C. *Use of the Eisen Trial Testimony*

■ Most troublesome is the government's use of the immunized testimony DeSalvo gave before the Eisen *trial* jury in December, 1990. Without question, all of that testimony was admissible to prove that DeSalvo lied during the course of that trial. *See Apfelbaum,* 445 U.S. at 117, 100 S.Ct. at 950. However, the instant prosecution was not limited to charges of perjury committed during the course of his Eisen trial testimony; DeSalvo was also charged with committing perjury in a prior proceeding (*i.e.,* the Eisen grand jury proceeding). The question,

then, is whether the government was equally free to use the Eisen trial testimony to prove that DeSalvo committed perjury in the prior grand jury proceeding. We believe it was not.

DeSalvo's first federal immunity order, signed by Judge Nickerson, immunized only DeSalvo's grand jury testimony. No doubt, had Judge Sifton not entered the second immunity order on December 20, DeSalvo would have been well within his rights to refuse to testify at the Eisen trial, given the real danger that truthful answers would reveal that he had committed perjury before the Eisen grand jury: "[T]he giving of truthful testimony on the second occasion could surely trigger investigation of whether the original testimony was false.... This is a reasonable cause for apprehension, and supports the claim of privilege." *United States v. Housand,* 550 F.2d 818, 823 (2d Cir.), *cert. denied,* 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977). *See In re Morganroth,* 718 F.2d 161, 166 (6th Cir.1983) ("When a witness is asked a question in a subsequent proceeding, the answer to which could show that he has already committed the crime of perjury in a prior proceeding, his refusal to answer is permissible almost by the definition of self-incrimination. The witness is still criminally accountable for his earlier perjury.").

Because the Fifth Amendment thus prohibited the government from compelling DeSalvo's testimony at the Eisen trial, the Eisen trial testimony—given in exchange for a grant of immunity—was inadmissible in a prosecution for perjury committed before the Eisen grand jury. As explained above, the government may not use a witness's immunized testimony in a prosecution for committing perjury in a prior proceeding. *See United States v. Doe,* 819 F.2d 11, 11 (1st Cir.1987) ("Appellant's immunized testimony in a future appearance before the grand jury cannot be used as evidence to prove a charge of perjury in giving false testimony in his prior appearance."); *United States v. Watkins,* 505 F.2d 545, 546 (7th Cir.1974) (the perjury exception to the federal immunity statute "refers to future perjury, future false statements or future failure to comply with the immunity order, rather than previous

acts"). Therefore, while the Eisen trial testimony was admissible to prove those counts of the indictment charging perjury and obstruction before the Eisen *trial* jury, that testimony was *not* admissible to prove those counts charging perjury and obstruction before the (earlier) Eisen *grand* jury. *See, e.g., United States v. Seltzer*, 621 F.Supp. 714, 716 (N.D.Ohio 1985) (improper to use "1983 immunized grand jury testimony in order to find a basis for prosecuting the defendant for the 1981 alleged perjury"), *later proceeding United States v. Seltzer*, 794 F.2d 1114 (6th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987).

 Having identified an error, we turn to the question of remedy. Under the unique facts of this case, we do not believe that the error we have uncovered warrants any relief. When the government violates the Fifth Amendment and 18 U.S.C. § 6002 by using immunized testimony, "generally the remedy for the violation is the suppression of the tainted evidence at trial, not a dismissal of the indictment." *United States v. Rivieccio*, 919 F.2d 812, 816 (2d Cir.1990), *cert. denied*, 501 U.S. 1230, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991). And, we have held that the improper use of immunized testimony at trial is subject to harmless error analysis. *See United States v. Gallo*, 859 F.2d 1078, 1082–83 (2d Cir.1988), *cert. denied*, 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989); *but see generally* Paul A. Murphy, Comment, *Use Immunity and the Fifth Amendment: Maybe the Second Circuit Should Have Remained Silent*, 63 St. John's L.Rev. 585 (1989).

 We are convinced that the error in admitting the Eisen trial testimony at DeSalvo's trial was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Gallo*, 859 F.2d at 1082. Notably, this is not a case in which the government proved the falsity of the prior testimony by reference to subsequent, inconsistent testimony. *Cf., e.g., Cameron v. United States*, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448 (1914). Nor does DeSalvo specifically allege that the government used his Eisen trial testimony to prove the falsity of his Eisen grand jury testimony.

To the contrary, DeSalvo testified *consistently* before the Eisen grand and trial juries; in both appearances, he denied knowing about and participating in the Eisen firm's racketeering.

Accordingly, there is no danger that DeSalvo's jury considered the testimony he gave before the Eisen trial jury to prove that he lied before the Eisen grand jury. Where, as here, the subsequent immunized testimony is the same as the earlier immunized testimony, a *Kastigar* hearing would simply have confirmed what was obvious to Judge Sifton: the government must have had an independent source to discover and prove that the earlier testimony was false. Therefore, we find that the use of DeSalvo's immunized testimony had absolutely no potential to disadvantage him.

 We note, moreover, that DeSalvo never specifically objected to the use of the Eisen trial testimony. This may have been because, as Judge Sifton observed, the government was not attempting to prove the falsity of some testimony by reference to testimony given at a different proceeding. *See* 797 F.Supp. at 163. Indeed, if DeSalvo truly feared that prejudicial spillover would result from the joinder of charges that he lied before the Eisen trial jury, he could have moved to sever those counts in the district court. Having failed to do so, he cannot complain about the joinder of these counts for the first time on appeal. *See, e.g., United States v. Tillem*, 906 F.2d 814, 827 (2d Cir. 1990).

## II. *Sentencing*

 DeSalvo's sentencing challenge need not detain us long. The Sentencing Guidelines allow the base offense level applicable to perjury and obstruction of justice to be increased three levels if the offense "resulted in substantial interference with the administration of justice." U.S.S.G. §§ 2J1.2(b)(2) (obstruction of justice); 2J1.3(b)(2) (perjury). Application Note 1 to sections 2J1.2(b)(2) & 3(b)(2) provides that substantial interference with the administration of justice includes "the unnecessary expenditure of substantial governmental or

court resources." Our standard of review is well settled: "The factors underlying a sentence need only be proved by a preponderance of the evidence, and the district court's findings of fact will not be disturbed unless clearly erroneous." *United States v. Jones*, 900 F.2d 512, 521 (2d Cir.) (citations omitted), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990). *See* 18 U.S.C. § 3742(e). DeSalvo contends that there is "no basis in the record" to support Judge Sifton's finding, and that our opinion in *Jones* requires a remand here. We cannot agree.

In *Jones*, we vacated and remanded for resentencing because the sentencing judge in that case "did not make any specific finding that Jones' perjury had resulted in any substantial expenditure of governmental resources." *Jones*, 900 F.2d at 521–22. We went on to observe, however, that "[t]he government need not particularize a specific number of hours expended by government employees" and that "[i]n some cases, when the defendant has concealed evidence and is the only known source of information, substantial interference with the administration of justice may be inferred." *Id.* at 522.

Judge Sifton made sufficient factual findings on the record at sentencing. Judge Sifton presided over the Eisen trial, and explained that his findings reflected not only the expenses associated with DeSalvo's trial, but also the expenditures associated with the Eisen trial. Without doubt, truthful and complete testimony by DeSalvo—who was the second highest ranking lawyer with the Eisen firm and a trial lawyer on cases which were the subject of several counts in the Eisen indictment—would have saved the government substantial investigative and trial expenses. Because Judge Sifton's conclusion was amply supported by the record, there is no basis to vacate the sentence.

## CONCLUSION

(1) Neither the Fifth Amendment nor the federal immunity statute prohibited the government from using all of the testimony DeSalvo gave in his three appearances before the Eisen federal grand jury to prove he committed perjury during the course of that proceeding. (2) It was not improper for the government to use leads derived from DeSalvo's state grand jury testimony to prove per-

jury committed before the federal juries because the risk of self-incrimination was too speculative to have invoked the privilege at the time of the state proceeding. (3) The government should not have used DeSalvo's immunized Eisen trial testimony in a prosecution for perjury that included charges that DeSalvo committed perjury in a prior proceeding. However, under the unique circumstances of this case, the violation did not disadvantage DeSalvo. (4) The record supports the sentencing enhancement.

We have considered all of DeSalvo's remaining arguments, including his challenges to the overall fairness of the trial and the prosecutor's summation, and find them meritless.

AFFIRMED.