**UNITED STATES of America,**
**Appellee,**

v.

**Jerry WEISSMAN, Defendant–**
**Appellant.**

**No. 98–1559.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 14, 1999.

Decided: Oct. 21, 1999.

* The Honorable John F. Keenan, of the United States District Court for the Southern District of New York, sitting by designation.

Teresa A. Pesce, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney for the Southern District of New York, Stephanos Bibas, Mei Lin Kwan–Gett, Ira M. Feinberg, Assistant United States Attorneys, New York, New York, of counsel), for Appellee.

Walter P. Loughlin, Latham & Watkins, New York, New York (Geoffrey S. Berman, Latham & Watkins, New York, New York; Judah Gribetz, Richards & O'Neill, LLP, New York, New York, on the brief), for Defendant–Appellant.

Before: FEINBERG, VAN GRAAFEILAND and SACK, Circuit Judges.

## PER CURIAM:

Jerry Weissman appeals from a judgment of the United States District Court for the Southern District of New York convicting him after a two-month jury trial before District Judge Charles S. Haight, Jr. of obstruction of justice, 18 U.S.C. § 1505, and perjury, 18 U.S.C. § 1621. Weissman asserts as error that his conviction was obtained through the use of information subject to the common interest rule arising out of the attorney client privilege, and that the district judge incorrectly enhanced his sentence for substantially interfering with the administration of justice causing unnecessary expenditure of government resources. We affirm.

Weissman was Chief Financial Officer of Empire Blue Cross/Blue Shield ("Empire"). His convictions stemmed from an investigation by the Permanent Subcommittee on Investigations ("PSI") of the United States Senate Committee on Government Affairs. In 1993, the PSI was conducting an investigation of a number of Blue Cross/Blue Shield health care providers, one of which was Empire. Empire retained the law firm of Willkie Farr & Gallagher to represent it. Weissman was asked by attorneys from Willkie Farr and Alan C. Drewsen, Esq., Empire's General Counsel, to assist them in presenting information to the PSI. Weissman apparently cooperated and met with the PSI staff through the Spring of 1993, although, as it later turned out, some of the information Weissman gave was false.

On June 2, 1993, evidence of probable personal wrongdoing by Weissman began to surface and the investigation began to focus on him. He decided that he needed his own counsel and on June 3, 1993, he retained John J. Kenney, Esq. of Simpson Thacher & Bartlett to represent him. Thereafter, Kenney and Weissman worked with Empire's attorneys in presenting information to the PSI.

On June 16, 1993, Maroa Velez, an internal auditor with Empire, had a conversation with Weissman regarding his accounting and reporting procedures. Ms. Velez was not satisfied with Weissman's answers. Weissman immediately walked to Kenney's office to discuss the encounter. Kenney advised Weissman that any disclosure of improprieties by him to Empire could affect his position with the company, but that Empire's legal counsel would not be able to disclose this information to third parties because Weissman and Empire were involved in a joint defense. Kenney called Drewsen and asked him to come to the Simpson Thacher office to meet with Weissman. Drewsen brought Louis A. Craco, Esq., a Willkie Farr partner, with him.

At this June 16th meeting, Weissman made damaging admissions regarding his own conduct. The parties disagree as to whether a joint defense agreement ("JDA"), pursuant to the common interest rule, was in existence or discussed during that meeting. Another meeting between

substantially the same parties was held on June 17th, but evidence of what transpired was excluded from the trial because the district court found that a JDA was in place on that date.

In March of 1994, Willkie Farr turned over its records of the June 16 and 17, 1993 meetings with Weissman to the United States Attorney's Office upon its request, after being informed that Empire was a target of a Grand Jury investigation. Upon learning that these records might be regarded as privileged material, the government placed one copy of the memorandum of the June 17th meeting which contained a specific reference to a JDA in a sealed envelope; the remaining copies were destroyed. The records of the June 16th meeting were kept intact until the issue of their confidentiality was resolved. The issue eventually was resolved in favor of the government, *See United States v. Weissman*, 22 F.Supp.2d 187, 189–90 (S.D.N.Y.1998).

The burden is on Weissman to demonstrate the existence of a JDA that would have precluded admission in evidence of Weissman's June 16th revelations of wrongdoing. *United States v. International Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir.1997). A district court's finding on the existence *vel non* of a privilege will be overturned only for abuse of discretion, although a determination as to the scope of a privilege is a matter of law subject to *de novo* review. *Id.*

In *United States v. Schwimmer*, 892 F.2d 237 (2d Cir.1989), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 31 (1991), we stated that a claim resting on the common interest rule requires a showing that "the communication in question was given in confidence and that the client reasonably understood it to be so given." *Id.* at 244. In determining whether there was an explicit JDA in the instant case, the district court was presented with conflicting testimony by respected attorneys whose professional reputations were at stake. The district court relied primarily

on the testimony of Drewsen and Craco in determining that no JDA was discussed during the June 16th meeting. In so doing, the court was influenced in part by the lack of any mention of a JDA in Drewsen's and Craco's notes taken at the meeting, while Kenney's and Weissman's notes from the meeting were missing. The district court suggested the possibility that without his notes, Kenney unconsciously might have testified in reliance upon what he usually did, rather than what he actually did. *Weissman*, 22 F.Supp.2d at 191.

A Court of Appeals "must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says." *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 634 (2d Cir.1996) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985)). We hold that the district court did not abuse its discretion when it found that Weissman failed to demonstrate the existence of an explicit JDA during the June 16th meeting.

The district court properly rejected Weissman's argument that there was an implied JDA in place during the June 16th meeting because of the parties' cooperative efforts that preceded that meeting. As the court observed, prior to Weissman's June 16th revelations, Empire had no reason to know of his wrongdoing. *United States v. Weissman*, No. S1 94 Cr. 760 (CSH), 1996 U.S. Dist. LEXIS 19066, at *65 (S.D.N.Y. Apr. 3, 1996); App. at A. 54–55. "Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected." *Schwimmer*, 892 F.2d at 243 (citations omitted). Preventing the disclosure of Weissman's wrongdoing was not an ongoing enterprise that Empire intended to further. The course of conduct among Weissman and the attor-

neys prior to June 16th was one of cooperation. Information was shared and strategy developed in concert, but Empire did not yet know of Weissman's unlawful conduct. The cooperative effort was to respond to the PSI's investigation, not to cover up Weissman's wrongdoing. Privileges should be narrowly construed and expansions cautiously extended. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). Some form of joint strategy is necessary to establish a JDA, rather than merely the impression of one side as in this case.*

The district court imposed a three-level enhancement to Weissman's offense level pursuant to U.S.S.G. §§ 2J1.2(b)(2) and 2J1.3(b)(2) for substantial interference with the administration of justice. Facts supporting sentencing findings need only be established by a preponderance of the evidence. Findings of fact in sentencing are reviewed under the clearly erroneous standard. *United States v. Beverly*, 5 F.3d 633, 642 (2d Cir.1993) (citation omitted). In arriving at an appropriate sentence, the district court discussed the nature of the resultant enhancement in a 28–page memorandum that we see no need to repeat. In order to warrant a substantial interference with justice enhancement, the government need not "particularize a specific number of hours expended by government employees." *United States v. DeSalvo*, 26 F.3d 1216, 1224 (2d Cir.), *cert. denied*, 513 U.S. 870, 115 S.Ct. 192, 130 L.Ed.2d 124 (1994) (quoting *United States v. Jones*, 900 F.2d 512, 522 (2d Cir.1990)). It is clear beyond dispute that the staff of the PSI was required to spend significant additional time on the Empire hearings as a result of Weissman's misconduct. The district court's decision to impose a three-level enhancement was therefore not an abuse of discretion.

---

* Because we hold that Weissman did not establish the existence of a JDA we need not address the question whether its protection ever was waived.

The conviction and sentence are affirmed.